FILED
SUPERIOR COURT
2018 MAY 23 PM 4: 11
CLERK OF COURT



# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| **PEOPLE OF GUAM,** | **CRIMINAL CASE NO.: CF0237-17** |
| vs. | |
| **PRUDENCIO JOHN CRUZ (*aka* "Pru")** <br> DOB: 05/01/1990 | **DECISION AND ORDER** <br> (Defendant's Motion to Suppress) |
| **DEFENDANT.** | |

## INTRODUCTION

This matter last came before the Honorable Anita A. Sukola on March 2, 2018 on Prudencio John Cruz's ("Defendant") Motion to Suppress. A Suppression Hearing was held on February 16, 2018. The Defendant was represented by Attorney Gloria Lujan Rudolph. Assistant Attorney General Matthew A. Phelps appeared on behalf of the People of Guam ("People"). Upon review of the evidence and testimony offered during the Suppression Hearing, and the oral arguments and legal authorities presented by the Parties, the Court hereby **DENIES** the Defendant's Motion to Suppress.

/ / /

/ / /

/ / /

ORIGINAL

CF0237-17 People of Guam vs. Prudencio John Cruz
DECISION AND ORDER (Defendant's Motion to Suppress)

Page 1 of 10

The Court finds the following facts from the testimony and evidence offered during the Suppression Hearing on February 16, 2018. On the evening of April 26, 2017, Guam Police Department Officers Troy B.S. Lizama and Jason M. Dodd were conducting burglary suppression operations in the Dededo area. At approximately 11:44 p.m., the officers were traveling in an unmarked police vehicle near the intersection of Ysengsong Road and Route 1. The officers both testified that at this time, their attention was drawn to a dark colored, single-cab pickup truck because one of the headlights and the vehicle's rear license plate light were not illuminated. The pickup was being driven by the Defendant. The officers also testified there was rain that evening, so they followed the vehicle but did not activate their emergency lights until they found somewhere safe for the vehicle to pull over. They eventually followed the vehicle onto Route 16 heading away from the Dededo/Harmon area. After following for a short period the rain started to lighten. The officers then activated their vehicle's emergency lights and sirens while following the pickup. The pickup complied and pulled over into the Barrigada Submarina parking lot.

Officer Lizama testified that after pulling the vehicle over, he approached the driver's side. Officer Lizama used his light to illuminate the interior of the vehicle, though he testified that he shined the light at the steering wheel and not at the Defendant. Officer Dodd stated he took a position at the right side rear of the vehicle to get a view of the Defendant. The emergency lights on the officers' vehicle were still on, and remained on throughout their interaction with the Defendant. The Defendant allegedly admitted to Officer Lizama that he knew of the equipment failures on his vehicle. The Defendant stated he was coming from a cockfight where the headlight was turning on and off, and he was not able to fix it. Officer Lizama then took the Defendant's license and vehicle registration and relayed the Defendant's biographical information over his radio to dispatch personnel. The Defendant's name came back clear of any warrants or other indicators which would prolong the vehicle stop. Officer Lizama testified that he then returned the Defendant's license and vehicle registration, and gave the Defendant a verbal warning for the headlight failure.

After Officer Lizama gave the Defendant the verbal warning, he testified that he then engaged in a conversation with the Defendant about whether the Defendant won at the cockfight. The Defendant allegedly stated that he won a little and lost a little. Officer Lizama explained that there are several ways to bet including inside and outside side bets, and derby betting, all of which he allegedly discussed with the Defendant.

After some discussion about how much the Defendant lost and won, Officer Lizama asked if the Defendant had anything illegal in the car or any firearms. The Defendant allegedly responded, "no, go ahead and check." Officer Lizama then asked if he could make a check of the vehicle to which the Defendant asked if he could put his money away before the officer searched. Officer Lizama requested that the Defendant move slow. The Defendant retrieved the money from behind the seat and put the money in the vehicle's glove compartment.

Officer Lizama then asked the Defendant to step out of his vehicle and the Defendant complied. The Defendant stood with Officer Dodd at the back of the Defendant's vehicle, and in front of the officers' police vehicle. Officer Dodd testified that he and the Defendant engaged in conversation while Officer Lizama conducted the search. The Defendant allegedly told Officer Dodd that it was cold that night.

Officer Lizama searched the vehicle, starting on the driver's side and eventually made his way to the passenger side. He allegedly found a clear Ziploc bag under the passenger seat. The bag had a substance inside that Officer Lizama suspected to be methamphetamine. Officer Lizama went to the rear of the vehicle and informed the Defendant that he found something. The Defendant returned with Officer Lizama to the passenger door. Officer Lizama had the Defendant look under the seat. The Defendant allegedly stated "wow, you [referring to Officer Lizama] put that there so fast" or words to that effect. Officer Dodd then secured the Defendant and Officer Lizama secured the suspected drug substance.

A sample of the substance found under the passenger seat was subjected to a field test which returned a presumptive positive reaction for the presence of methamphetamines. The weight of the substance in the bag was approximately twenty-five (25) grams. That amount of

methamphetamine would have had a street value of approximately Six Hundred Dollars ($600.00) a gram at the time the Defendant was pulled over, according to Officer Lizama.

On May 16, 2017, a Grand Jury returned an indictment against the Defendant charging him with **POSSESSION OF A SCHEDULE II CONTROLLED SUBSTANCE WITH INTENT TO DELIVER (As a 1ˢᵗ Degree Felony)**, **POSSESSION OF A SCHEDULE II CONTROLLED SUBSTANCE (As a 3ʳᵈ Degree Felony)**, and **DRIVING WITH DEFECTIVE HEADLIGHTS (As a Violation)**.

The Defendant filed the instant Motion to Suppress on October 17, 2017. The People filed an Opposition on November 1, 2017. The Defendant replied to the Opposition on November 7, 2017. This Court was assigned to this matter when the Court inherited the Adult Drug Court Docket on January 3, 2018. This Court promptly set a suppression hearing for February 16, 2018. The Court took the matter under advisement on March 2, 2018.

## DISCUSSION

In the Motion to Suppress, the Defendant argues suppression of the substance seized under the seat is appropriate because the drugs were seized "as the fruit of an unjustified detention and search and seizure . . . ." Def's Mot. Suppress 5 (Oct. 17, 2017). Specifically, the Defendant argues the officers continued to detain him after giving the verbal warning in violation of the Fourth Amendment. Id. at 3-4. Importantly, the Defendant only contests the alleged extension of the traffic stop, not the officer's initiation of the traffic stop. In opposition, the People argue that the Defendant was not unconstitutionally seized and further, that the Defendant consented to the search of his vehicle. See People's Opp'n Mot. Suppress 2-5 (Nov. 1, 2017).

The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. The Amendment's protections are extended to Guam via the Organic Act of Guam. See 48 U.S.C.A. § 1421b (West 2017). Every seizure or search of a person, or their house, papers, and effects, must be reasonable to be constitutionally permissible. See People v. Chargualaf, 2001 Guam 1 ¶ 14. A search or seizure that is not authorized by a duly

issued warrant is presumed unreasonable. People v. Chargualaf, 2001 Guam 1 ¶ 14 (citing Pennsylvania v. Strickler, 757 A.2d 884, 888 (Pa. 2000)).

When police pull a vehicle over, a seizure occurs for the purposes of the Fourth Amendment. See Id. at ¶ 17. However, there is an exception to the warrant requirement which allows police to pull a vehicle over without a warrant "where the police merely have reasonable suspicion to believe the driver has committed a traffic violation." Id. at ¶ 17. Once a seizure of a vehicle based on reasonable suspicion of a traffic violation occurs, the seizure must "last no longer than is necessary to effectuate the purpose of the stop and be carefully tailored to its underlying justification." Florida v. Royer, 460 U.S. 491, 500 (1983).

Courts have recognized that where the reason for a traffic stop was legitimate, the driver must be allowed to leave "if a license and registration check reveal no reason to detain the driver unless the officer has reasonable articulable suspicion of other crimes *or* the driver consents to further questioning." U.S. v. West, 219 F.3d 1171, 1176 (10th Cir. 2000) (*emphasis added*). A traffic stop could cease to be a seizure and become a consensual encounter "if the officer returns the license and registration and asks questions without further constraining the driver by an overbearing show of authority." Id. (reasoning "a consensual encounter is the voluntary cooperation of a private citizen in response to non-coercive questioning by a law enforcement officer"). Therefore, once a traffic stop is completed, if a consensual encounter occurs between an officer and defendant, there is no longer a seizure for the purposes of the Fourth Amendment. See U.S. v. Wilson, 413 F.3d 382, 388 (3d Cir. 2005).

The test for whether an encounter is consensual or constitutes a seizure is, considering the totality of the circumstances, "whether the police conduct would have conveyed to a reasonable person that he or she was not free to decline the officer's requests or otherwise terminate the encounter." See West, 219 F.3d at 1176; see also Chargualaf, 2001 Guam 1 at ¶ 21. There is no requirement that the officer tell a defendant that he does not have to respond or is free to leave. West, 219 F.3d at 1176.

A reasonable person would feel free to decline an officer's engagement in a conversation after the conclusion of a traffic stop, where the officer returns a defendant's documents; does not block, detain or hold the defendant's vehicle; does not act in a commanding or threatening manner or use such a tone of voice; does not display his weapon; and does not touch the defendant. See West, 219 F.3d at 1177 (holding a traffic stop turned into a consensual encounter where, after the officer issued a warning and returned the defendant's documents, the officer asked (1) about the defendant's travel plans, (2) whether the defendant had any firearms or drugs, and (3) whether the officer could search the vehicle); see also, Chargualaf, 2001 Guam 1 at ¶ 24 (holding a reasonable person would feel free to leave after a traffic stop even if the police still held the defendant's identification and registration documents, where the officer: (1) did not act or speak in an overly aggressive manner; (2) did not draw his firearm; (3) did not block the defendant's vehicle, and (4) did not otherwise engage in coercive behavior that would indicate to a reasonable person that they were not free to end the encounter and leave).

A reasonable person would not feel free to end an encounter with police and leave, for purposes of the Fourth amendment, where an officer takes and retains a defendant's identification and registration papers, initiates inquiry while retaining such papers, and keeps a hand on his firearm throughout the interaction. See U.S. v. Chan-Jimenez, 125 F.3d 1324, 1326 (9th Cir. 1997) (reasoning a defendant was seized where an officer (1) approached the defendant and a stalled vehicle on the side of a highway, (2) with his hand on his revolver, (3) asked for and retained the defendant's identification and registration documents, and (4) asked the defendant questions while continuing to keep his hand on his revolver).

A reasonable person may also be seized, for purposes of the Fourth Amendment, simply by the language used by an officer. See U.S. v. Richardson, 385 F.3d 625, 629-30 (6th Cir. 2004) (holding the defendant was seized where (1) the officer handed a defendant his registration and identification documents, (2) shook the defendants hand, and (3) said "okay, just hang out right here for me okay," notwithstanding the fact that the officer did not speak in an intimidating tone

because a reasonable person would not feel free to leave in contravention of an order from a law enforcement officer).

Here, the Defendant does not challenge the constitutionality of the initial stop for the defective headlight and license plate light. The Defendant only attacks the portion of the interaction after Officer Lizama handed the defendant his identification and registration documents and issued a verbal warning for the equipment failures. The Court finds that even though Officer Lizama did not tell the Defendant he was free to go at that point, the Defendant was not seized for purposes of the Fourth Amendment.

Similar to the facts in West and Chargualaf, Officer Lizama and the Defendant were engaged in a consensual interaction. Officer Lizama asked about the Defendant's time at the cockfight, which was neither accusatory, intimidating, or coercive. Further, the Defendant engaged in conversation with Officer Lizama discussing the money he won and lost at the cockfight. Nothing about the conversation suggests that Officer Lizama or Dodd engaged in conduct that would indicate the Defendant was not free to leave. The officers' actions also do not support a finding that they attempted to intimate or coerce the Defendant into remaining at the scene. Similar to the facts in West and Chargualaf, and unlike the facts in Chan-Jimenez, there is no indication that Officers Lizama or Dodd ever touched or otherwise used the presence of their firearms to even imply that the Defendant was not free to leave or otherwise coerce or intimidate the Defendant.

Additionally, unlike the facts in Richardson, there was no testimony that Officer Lizama or Dodd suggested by their speech, implicitly or expressly, that the Defendant was not free to leave after Officer Lizama returned the Defendant's identification and registration documents. The Defendant responded to the question of whether he had anything illegal such as drugs in the car stating, no you can check. The Officer then asked for consent to search again. The Defendant also had permission to move certain items before the search was conducted. The fact that the officer asked for permission to search is in and of itself evidence which supports the conclusion that the officers gave the Defendant the option to consent to the search. This conclusion supports a finding

that a reasonable person in the Defendant's position would have understood he had the option to decline the request, end the interaction, and leave.

Thus, having considered the relevant facts adduced at the Suppression hearing, the Court finds the Defendant was not seized for the purposes of the Fourth Amendment after Officer Lizama returned the Defendant's documents and gave the Defendant a verbal warning. Because the Court finds the seizure was from that point a consensual encounter between the Defendant and the officers, the Court finds the case relied on by the Defendant, Rodriguez v. United States, is inapplicable to the facts herein. See Rodriguez v. U.S., 135 S.Ct. 1609 (2015) (holding "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures"). Therefore, to the extent the Defendant argues for suppression under the Fourth Amendment because of an unconstitutional seizure, the Defendant's motion is **DENIED**.

However, finding no seizure occurred does not end the Court's inquiry. The Court must also consider whether the search of the Defendant's vehicle was constitutionally permissible. There is no dispute that the search of the vehicle here occurred without a duly executed warrant. Thus, the search must fall within an exception to the Fourth Amendment's requirement of a warrant to withstand constitutional scrutiny.

Voluntary consent is an exception to the warrant requirement. See Chargualaf, 2001 Guam 1 at ¶ 14. The government has the burden of proving the consent to the search was voluntary under the totality of the circumstances. Id. at ¶ 25. The Supreme Court of Guam has listed the following factors that could assist trial courts in determining whether consent to a search is voluntary:

> (1) Whether the defendant was detained and the length of time of the questioning; (2) whether the defendant was threatened or intimidated by the police; (3) whether the defendant relied on misrepresentations or promises made by the police; (4) whether the person was in custody or under arrest when the consent was given; (5) whether the person was in a public or a secluded place; and (6) whether the defendant objected to the search.

Chargualaf, 2001 Guam 1 at ¶ 25 (citing People v. Santos, 1999 Guam 1 ¶ 36).

Consent to search is given voluntarily where an officer does not engage in coercive behavior, did not make any representations to the defendant, where the defendant is neither in custody nor under arrest, and where the defendant makes no objection to the search. See Chargualaf, 2001 Guam 1 at ¶ 27 (holding under the totality of the circumstances, the defendant's consent to a search of his vehicle was voluntary because there was no indication that the officer's did or attempted to coerce the defendant, and the defendant was not in custody at the time the officer requested consent to search the vehicle).

Here, similar to the reasoning of whether the Defendant was seized for the purposes of the Fourth Amendment, the totality of the circumstances supports the conclusion that the Defendant voluntarily consented to the search of his vehicle. The Defendant was pulled over in a public place: a shoulder of a highway in plain view of passersby. There was no testimony that the initial detention and consensual encounter together lasted an unreasonable amount of time. Further, Officer Lizama was speaking with the Defendant in a normal tone. There is no evidence that Officer Lizama employed any tactics that were intimidating or coercive. There was also no evidence of any threats made by either officer to the Defendant.

Rather, Officer Lizama testified that after discussing the Defendant's activities at the cockfight earlier in the evening, he asked the Defendant whether he had anything illegal or firearms in the vehicle. The Defendant then replied that there were none and offered the Officer the option to check. Officer Lizama testified that he then asked if the Defendant consented to a search of the vehicle and the Defendant replied in the affirmative. There was no testimony that the Defendant objected to the search, rather the testimony was that he offered the option to search, which Officer Lizama confirmed. The Defendant was also not in police custody and there is no evidence Officer Lizama made any representations the Defendant relied on in consenting to the search.

Therefore, the Court finds the totality of the circumstances demonstrates that the Defendant's consent to the search of his vehicle was voluntarily given. Thus, to the extent the

CF0237-17 People of Guam vs. Prudencio John Cruz
DECISION AND ORDER (Defendant's Motion to Suppress)

Page 9 of 10

Defendant argues suppression of the drugs found in his vehicle is appropriate because of an unconstitutional search of his vehicle, the Defendant's motion is **DENIED**.

### CONCLUSION

By preponderance of the evidence and based on the foregoing reasons, the Defendant's Motion to Suppress is hereby **DENIED**.

A **Criminal Trial Setting** is set for _____6/19/18____ at ___9a.m___.

SO ORDERED _____5/23/18_____ .

_____
The Honorable Anita A. Sukola
Judge, Superior Court of Guam

ERVICE VIA COURT BOX
I acknowledge that a copy of the original hereto was placed in the court box of;
_____AG & LU J___
Date: 5/23/18  Time: 4:15pm
_____ T. G____
Deputy Clerk, ___